UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ANGIE M. BRADLEY, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO. 3:07-CV-599 CAN |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On December 6, 2007, Plaintiff, Angie M. Bradley ("Bradley"), filed her complaint in this Court. On May 19, 2008, Bradley filed an opening brief, in which she asks this Court to enter judgment in her favor or to remand this matter to the Commissioner. On July 3, 2008, Defendant, Commissioner of Social Security ("Commissioner"), filed its response brief. On August 1, 2008, Bradley filed her reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.     PROCEDURE**

On December 29, 2003, Bradley filed her application for Supplemental Security Income ("SSI"). (Tr. 14). Bradley claims she is entitled to benefits pursuant to Title XVI of the Social Security Act. See 42 U.S.C. §§ 416(I), 423. Bradley's application was initially denied and again upon reconsideration. (Tr. 14). On December 19, 2006, Bradley appeared at a hearing before an Administrative Law Judge ("ALJ"). (Tr. 14). The ALJ found that Bradley has severe impairments of depression, anger, and maladaptive personality traits. (Tr. 17). The ALJ found that Bradley has the residual functional capacity ("RFC") to perform work at all exertional levels

except for work that involves intense conduct with the public or strangers. (Tr. 19). Based on Bradley's age, education, work experience, and RFC, the ALJ found that a significant number of jobs within the national economy existed that Bradley could perform. (Tr. 24). Therefore, the ALJ found that Bradley was not disabled. (Tr. 25).

Bradley appealed the ALJ's decision to the Appeals Council. (Tr. 6 ). On September 6, 2006, the Appeals Council denied Bradley's request for review, and as a result, the ALJ's decision became the Commissioner's final decision. (Tr. 6-10). 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, Bradley filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## II. ANALYSIS

### A. Facts

At the time of the ALJ's decision, Bradley was 31 years old with an eighth grade education. (Tr. 11, 69-70, 72). She has prior relevant work experience as a cook, machine operator, and a nursing assistant. (Tr. 114).

Bradley alleges that she has been disabled since December 1, 2003 because of her mental impairments including bipolar disorder, borderline personality disorder, major depressive disorder, and oppositional defiant disorder. (Tr. 116-17, 122-31, 140-41). Bradley's mental health issues started when she was a child; and, since then, she has been institutionalized several times for psychological problems, substance abuse, and legal problems. (Tr. Id.). She claims that at times she either sleeps all day or cannot sleep at all. (Tr. 299). She has also reported to

physicians that she experiences a loss of appetite, energy and motivation, and disturbed concentration. (Tr. 299).

Bradley testified, that while she has been prescribed medication for her mental condition, she sometimes forgets to take it; and, at other times, she gets in a mood where she just does not feel like taking it. (Tr. 18, 344). In addition, Bradley stated that she has missed psychiatric appointments because she sleeps all day or cannot get out of bed. (Tr. 18). Bradley is able to do some household cleaning and shopping but does not cook much. (Tr. 226, 342). Additionally, Bradley has a live-in friend, Rodney McCallister ("McCallister"), who helps her with the children. (Tr. 345). McCallister testified that if he did not help out with Bradley's children Social Services would have taken them away. (Tr. 342-43). Several doctors have assisted Bradley for her mental health problems.

1. Dr. Babcock

On March 12, 2004, Dr. Babcock, a clinical psychologist, performed a consultative psychological examination of Bradley. (Tr. 225-29). He reviewed records of Bradley's behavior based on previous treatment she had received. (Tr. 225-29). Dr. Babcock found that while Bradley could perform activities consistent with a person of low average intelligence, she appeared to have difficulty doing activities consistently on a daily basis. (Tr. 228). He concluded that her inability to sustain responsible activity was consistent with a history of severe personality disorder, including depressive disorder, borderline personality disorder, and antisocial personality disorder. (Tr. 229).

2. <u>Nurse Practitioner, Phoebe Ritter</u>

On December 22, 2003, Phoebe Ritter ("Ritter"), a nurse practitioner, met with Bradley for the first time and found Bradley to be depressed and restless. (Tr. 275). Thereafter, Ritter saw Bradley periodically until around July 9, 2004. (Tr. 250-52). Over the several months that Ritter treated Bradley, Ritter gave Bradley GAF scores ranging from forty to sixty-five.[1] (Tr. 275, 250-52). However, in her reports, Ritter indicated that Bradley's functioning was slowly improving, noting that Bradley was having more "days of ups and less down days." (Tr. 263, 257).

In June 2004, Bradley admitted that she had stopped taking her medicine. (Tr. 253). Ritter stated that it would take months for the medications to stabilize Bradley's condition and noted that Bradley had just started taking them. (Tr. 274). Ritter also indicated that people with Bradley's condition will likely need life long psychiatric therapy and will occasionally need inpatient treatment. (Tr. 274).

On July 9, 2004 Ritter completed a medical assessment of Bradley's ability to do work-related mental activities. (Tr. 250-52). Ritter rated Bradley's ability to relate predictably in social situations and to act responsibly. (Tr. <u>Id</u>.). However, Ritter reported that Bradley's ability to interact with co-workers and customers was poor. (Tr. <u>Id</u>.). Ritter found that Bradley had no ability to interact with supervisors or to perform within a schedule. (Tr. <u>Id</u>.). Finally, Ritter noted that Bradley would decompensate under stress. (Tr. <u>Id</u>.).

3. <u>Other Physicians</u>

---

[1] GAF scores represent on a single day an individual's overall level of functioning, including symptom severity. The higher the GAF score, the less severe the symptoms and the individual will have a higher level of functioning.

Dr. LePor, Bradley's primary care physician, set up an appointment for Bradley to meet with a psychiatrist regarding her bipolar disorder. (Tr. 219). Dr. LePor stated that he believed Ms. Bradley was "totally unable to work." (Tr. 212).

Irene Hoover, a nurse practitioner, developed Bradley's initial treatment plan and diagnosed her with bipolar disorder, post-traumatic stress disorder, and attention deficit hyperactivity disorder. (Tr. 286).

        4.        State Agency Physicians

Dr. F. Kladder, a non-examining State Agency psychologist, found Bradley to have only mild or moderate degree of limitation in her social functioning and daily activities. (Tr. 240). Additionally, Dr. Kladder found Bradley's bipolar disorder diagnosis to be unsupported due to an absence of undocumented severe mania with decompensation. (Tr. 242). Instead, Dr. Kladder diagnosed her with severe NOS affective disorder and a severe personality disorder. (Tr. 22). Another state agency psychologist, Dr. J. Gange, reviewed and affirmed Dr. Kladder's assessment of Bradley. (Tr. 247).

The major issues this Court must resolve are: whether the ALJ properly decided not to award the opinions of Bradley's treating physicians controlling weight and whether the ALJ properly assessed Bradley's credibility.

        B.        Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant

5

evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. Haynes, 416 F.3d at 626.

    C.      Bradley's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Bradley must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: 1) the claimant is presently employed; 2) the claimant has a severe impairment or combination of impairments; 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; 4) the claimant's RFC leaves him unable to perform his past relevant work; and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment

meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpt. P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

       1.    <u>The ALJ's decision to give the opinions of Bradley's examining physicians less weight was not supported by substantial evidence.</u>

Bradley contends that the ALJ erred by not assigning more evidentiary weight to the opinions of her examining physicians. An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. <u>Hofslien v. Barnhart</u>, 439 F.3d 375, 376 (7th Cir. 2006). "This rule . . . seems to take back with one hand what it gives with the other, and as a result to provide little in the way of guidance to either." <u>Id</u>. More weight is generally given to the opinion of a treating physician because she is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 416.927(d)(2); <u>Clifford v. Apfel</u>, 227 F.3d 863, 870 (7th Cir. 2000). However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. <u>Dixon v. Massanari</u>, 270 F.3d 1171, 1177 (7th Cir. 2001).

Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. <u>Clifford</u>, 227 F.3d at 870. However, the ALJ must avoid

7

substituting his own opinion for that of the treating physician without relying on medical evidence or authority in the record. 20 C.F.R. § 416.927(d)(2); Clifford, 227 F.3d at 870; Rohan v. Chater, 98 F.3d 966, 968 (7th Cir. 1996). When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh. Hofslien, 439 F.3d.at 377. Unfortunately, there is no bright line for when a physician's opinion is inconsistent with other substantial evidence in the record, and it is essentially a case by case determination depending on the circumstances. Id.

An ALJ must weigh all medical opinions in accordance with the regulations taking into consideration examining relationship, treatment relationship, supportability, consistency, specialization, and any other factors that are relevant. 20 C.F.R. 416.927(d)(1)-(6). Under the regulations, acceptable medical sources include treating, non-treating, and non-examining sources. 20 C.F.R. § 416.902. A treating source is an individual's own physician, psychologist or other acceptable medical source that has provided that individual "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship" with that individual. Id. A non-treating source is a physician psychologist or other acceptable medical source who has examined an individual "but does not have, or did not have, an ongoing treatment relationship" with an individual. Id. A non-examining source is a physician, psychologist or other acceptable medial source that has not examined an individual but has provided a medical or other opinion. Id.

In this instance, there is not one treating physician in whom the ALJ may give controlling weight. Under the regulations, Dr. Babcock qualifies as a non-treating, examining physician because he only examined Bradley once. 20 C.F.R. § 416.902. Similarly, Dr. Kladder qualifies

as a non-treating, non-examining physician, because he never examined Bradley but only reviewed Bradley's medical record. Id. While nurse practitioner Ritter has met with Bradley more than any other physician, she is not an "acceptable medical source." 20 C.F.R. §416.913; SSR06-03p. As such, Ritter qualifies as an "other source" and her opinion may only be used to assess the severity of the impairment. Id.

          a.      Dr. Babcock

In his decision, the ALJ did not give the opinion of Dr. Babcock, an examining physician, significant weight because the ALJ concluded that Dr. Babcock's evaluation was both based on a subjective observation and inconsistent with other medical opinions. Although the ALJ noted Dr. Babcock's impression that Bradley displayed symptoms consistent with depressive disorder and borderline personality disorder, the ALJ concluded that Dr. Babcock's opinion was based solely on a subjective evaluation of Bradley's self-reports. (Tr. 22). Further, the ALJ concluded that Dr. Babcock's assessed GAF scores were inconsistent with those made by Bradley's other mental health providers. (Tr. 22). As such, the ALJ chose to give less weight to the opinion of Dr. Babcock and to give more weight to the opinion of the non-examining State Agency physicians. (Tr. 22-23, 19).

The ALJ may properly reject a doctor's opinion if it is based on subjective allegations rather than objective observations. Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004); Butera v. Apfel, 173 F.3d 1049, 1057 (7th Cir. 1999). However, when evaluating the conflicting opinions of an examining and a non-examining physician, contradictory evidence by the non-examining physician, by itself, is not enough evidence to discount the examining physician's opinion. Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003).

9

In this instance, the ALJ discredited the opinion of the examining physician, Dr. Babcock, because the ALJ concluded that Dr. Babcock's GAF score of 45 was inconsistent with Dr. Babcock's own assessment of Bradley's functioning. (Tr. 22). The ALJ found that "[a]ccording to the Diagnostic Manual [ ], a score of 45 is consistent with an inability to function in almost all areas." Id. Because the ALJ believed Dr. Babcock's assessment of Bradley's actual functioning was inconsistent with the Diagnostic Manual's ("DSM-IV") characterization, the ALJ decided to give Dr. Babcock's opinion less weight. Id. In particular, the ALJ noted Dr. Babcock's observation that Bradley's "oversees a functioning household with six children." Id. Because of this apparent inconsistency, the ALJ concluded, "[Dr. Bradley's] use of such a GAF score, and his examination report as a whole, indicate that his single examination was not able to accurately assess the claimant's mental status." Id.

However, in reaching his conclusion, the ALJ misread the DSM-IV's description for GAF scores between 41-50. Indeed, the Commissioner admits that the ALJ incorrectly made a mistake in articulating the description. See Doc. No. 18 at 15. An individual assessed with a GAF score of 45 is described as follows: "serious symptoms (e.g., suicidal ideation, severe obsessional ritual, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (1994). See also Doc. No. 23 at 5-6. However, an individual assessed with a GAF score of between 21-30 is characterized as having a "inability to function in almost all areas." Id. As such, it appears that the ALJ mischaracterized the record evidence, misinterpreting Bradley's GAF score of 45 to that of a 21-30. Because the ALJ's misreading of the GAF scale was a primary reason for the ALJ

finding that Dr. Babcock's opinion was inconsistent with other record evidence, the foundation for the ALJ's decision the give lesser weight to Dr. Babcock's opinion is not substantially supported.

        b.      <u>Nurse Practitioner, Phoebe Ritter</u>

Ritter concluded that Bradley was depressed and had difficulty performing work-related activities. (Tr. 275, 250-52). However, the ALJ gave little weight to Ritter's diagnoses and opinions. (Tr. 21, 23). To begin, the ALJ found Ritter's assessments to be based primarily on Bradley's reporting, who, at the time, was not complying with her treatment. (Tr. 23). Additionally, the ALJ found Ritter's assessment to be internally inconsistent. (Tr. 21). For instance, the ALJ noted that Ritter simultaneously opined that Bradley seemed to be improving yet indicated that Bradley was unable to perform work-related tasks 50% of the time or had no ability to function in that area. <u>Id</u>.

Bradley argues that the ALJ erred in not giving Ritter's opinion more weight. However, this Court finds that the ALJ's conclusion to award Nurse Practitioner Ritter little weight was supported by substantial evidence. In particular, the ALJ pointed out inconsistencies in Ritter's assessment, drawing a "logical bridge" from his conclusion to the evidence. In addition, unlike the ALJ's assessment of Dr. Babcock, the ALJ did not mischaracterize the evidence in drawing his conclusions. As such, this Court finds that the ALJ's decision to afford Ritter's opinion less significance was supported by substantial evidence.

    2.    <u>The ALJ's determination regarding Bradley's credibility was not supported by substantial evidence</u>.

11

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). Social Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding. Golembiewski, 322 F.3d at 915; Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). An ALJ cannot simply state that an individual's allegations are not credible. Golembiewski, 322 F.3d at 915. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). When an ALJ's determinations are based on objective factors rather than subjective considerations, such as the claimant's demeanor, there is greater freedom to review the ALJ's decision. Clifford, 227 F.3d at 872. However, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (quoting Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)).

The ALJ found Bradley's testimony regarding her symptoms to be not fully credible because the ALJ determined Bradley to be non-compliant with her prescribed treatment. (Tr. 19). Instead, the ALJ concluded that Bradley would be more functional if she were compliant with her medications. (Tr. 18). In support, the ALJ noted that Bradley changed her testimony after the ALJ questioned her on the subject. Id. Further, the ALJ found that Bradley was capable of evaluating her moods and behavior. Id. As such, the ALJ concluded that Bradley's

testimony did not support a finding that compliance with treatment would not improve her behavior. Id. Accordingly, the ALJ found that Bradley's testimony regarding her mental impairment was not credible. (Tr. 19).

Courts have long recognized that "inexcusable" failure of a claimant to comply with treatment or to take prescribed medication is a reason to find a claimant's allegations of disability not credible. Ehrhardt v. Secretary of Health & Human Services, 969 F.2d 534, 538 (7th Cir. 1992); Prochaska v. Barnhart, 454 F.3d 731, 737 (7th Cir. 2006). However, in instances of alleged mental illness, in order for the ALJ's opinion to be substantially supported, the ALJ should take into account whether the mental illness, itself, may have prevented the claimant from complying with her prescribed treatment. Kangail v. Barnhart, 454 F.3d 627, 630-31 (7th Cir. 2006).

In Kangail, the claimant was diagnosed with bipolar disorder and suffered from substance abuse. Id. at 628. The claimant had difficulty holding jobs because of her manic and depressive episodes. Id. at 630. For example, the claimant had confrontations with customers and supervisors, struggled with inability to concentrate, and suffered from insomnia. Id. The ALJ found that she was not disabled, however, because the claimant could work when she took her medication. Id. However, the Seventh Circuit held that the ALJ's opinion did not have a rational basis, in part, because the ALJ did not consider the effect that the claimant's bipolar disorder may have had on preventing her from complying with prescribed medical treatment. Id. at 631. As such, the Seventh Circuit concluded that the ALJ's did not provide a rational basis for denial of disability benefits. Id.

In the immediate case, the ALJ supported his credibility determination, primarily, on the basis that Bradley was non-compliant with her medication. In particular the ALJ stated, "[t]he claimant is non-compliant with her medications and were she to be compliant she would be more functional than she says that she is." (Tr.18). Further, the ALJ concluded, "[t]he claimant's non-compliance with her prescribed treatment regime makes the claimant's testimony unreliable in view of the difficulty determining her capacity if were she compliant." (Tr. 19). Instead, the ALJ concluded that Bradley would be able to make her appointments and control her inappropriate behavior if she complied with her medication. (Tr. 18) ("Nothing in this testimony supports a finding that compliance with her treatment regime would not improve these behaviors."). (Tr. 18).

Nowhere in the ALJ's opinion did the ALJ discuss how Bradley's symptoms of mental illness may have affected Bradley's ability to comply with her treatment. Consistent with Kangail, the ALJ's credibility determination is not substantially supported because the ALJ failed to consider the relationship between Bradley's alleged mental impairment and its effect on her ability to comply with her prescribed treatment.

### III.  CONCLUSION

The ALJ's decision to afford the non-examining State agency physicians more weight than Bradley's examining physician was not supported by substantial evidence, because the ALJ misconstrued the evidence he used to support his opinion. In addition, the ALJ's analysis of the claimant's credibility was not supported by substantial evidence, because the ALJ failed to consider the effect that Bradley's mental illness may have had on Bradley's non-compliance. As a result, this Court **GRANTS** Bradley's motion. [Doc. No. 15]. Accordingly, this case is

**REVERSED** and **REMANDED** to the Commissioner for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S.C. § 405(g).

**SO ORDERED.**

Dated this 25th Day of November, 2008.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge